UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                    Case No. 8:18-bk-07868-CPM
                                                          Chapter 7

Leon B. Hopper,

         Debtor

_____/

**CHAPTER 7 TRUSTEE'S AMENDED APPLICATION TO RETAIN
BK GLOBALREAL ESTATE SERVICES AND HUNT REALTY GROUP, INC. TO
PROCURE CONSENTED PUBLIC SALE PURSUANT TO 11 U.S.C. §§327, 328 & 330**

        Christine Herendeen, as Chapter 7 Trustee (the "Trustee") for the above referenced

Debtor (together, the "Debtor"), files this Application to authorize retention of (1) BK Global

Real Estate Services ("BKRES") and (2) Hunt Realty Group, Inc. (the "Listing Agent")  In

support thereof, the Trustee respectfully states as follows:

PRELIMINARY STATEMENT

        The Trustee requests approval to retain BKRES and Hunt Realty Group, at no cost to

the estate, to negotiate with and persuade the first lien holder on certain real property in which

the estate has no equity to (1) allow Trustee to sell such property at the highest price that the

market will bear, (2) waive the resulting deficiency claim and (3) pay a 11 U.S.C. § 506

surcharge to provide a carve out for the benefit of the estate and pay all other sale expenses,

including a 6% brokerage commission that will be shared equally by BKRES and Listing Agent

only upon the closing of a sale that is approved by this Court.

        BKRES and its affiliates have proprietary technology and a national team of

experienced loan servicing specialists, asset managers, negotiators, trustee relation managers,

real estate brokers and agents, closing specialists and attorneys with extensive experience in

procuring the consent of mortgage lenders and servicers to sell over-encumbered properties and

provide significant cash recoveries to selling estates with no equity, through the Consented Sale™ process described herein.

BKRES and Listing Agent will not be entitled to any compensation from the estate whatsoever under any circumstances. They will only receive and share a customary brokerage commission that is paid by secured creditor as a 11 U.S.C. § 506 surcharge approved by this Court.

The Trustee (1) believes that hiring BKRES and Listing Agent to pursue a Consented Sale™ will likely result in secured creditor paying a carve out for the benefit of the estate with proceeds from the public sale of an asset in which the estate has no equity and (2) expects to obtain secured Creditors' agreement to a Consented Sale™, and bring a separate motion seeking this Court's approval of the procedures, terms and conditions by which the over-encumbered property will be sold, within the coming months.

## Jurisdiction

1.      This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O).

2.       Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

## Background

3.      On September 18, 2018, the Debtor commenced this case by filing a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code, and on October 11, 2018, the case converted to one under Chapter 7 of the United States Bankruptcy Code.

4.      Thereafter, the Trustee was appointed as the Chapter 7 Trustee in this case.

5.      The Trustee held the 341 meeting on November 14, 2018 and concluded the meeting on December 19, 2018.

6.      The Debtor is the sole owner of real property located at 12022 ROSE LN RIVERVIEW, FL 33569 (the "Property").

7.      The Debtor scheduled the Property with a value of $200,000.00.  The Property is subject to mortgage liens (the "Senior Mortgage") in favor of Wells Fargo Home Mortgage (collectively, the "Secured Creditors") in an amount exceeding $267,952.00.

8.    The Trustee, after reviewing certain materials, including (without limitation) the BK Score™[1], sales analysis report and opinion of value for the Property provided by BKRES and Listing Agent, has determined it to be in the best interest of the Debtor's estate and all creditors to negotiate to obtain Secured Creditor's agreement and consent ("Consent") to do the following, with the proviso that the hired professionals, BKRES or Local Agent, shall not participate in the sale and purchase of any estate property except as hired brokers:

    a.  sell the Property to whichever third party Trustee determines to have made the best qualified offer during a public sale approved by the Court;

    b.  release the Senior Mortgage and otherwise waive all of its claims against the estate with respect to the Property (including any deficiency claims resulting from the proposed sale); and

---

[1] The BK Score™ is a 100-point rating that is generated by a proprietary algorithm from 10 unique property attributes in order to consistently measure sales confidence and predict market value.

    c.   If the Property is sold to a third party, agree to a 11 U.S.C. § 506 surcharge to pay all the expenses associated with the proposed sale, including the payment of a 6% real estate brokerage commission to BKRES and Listing Agent and reimbursement of their out-of-pocket expenses, and provide a carveout for the benefit of allowed unsecured creditors of the Debtor's estate;

    d.   If Secured Creditor purchases property, agree to a 11 U.S.C. § 506 surcharge to pay all the expenses associated with the proposed sale, including the payment of a 2% real estate brokerage commission to BKRES, of which a $500.00 fee will be paid to Listing Agent, and provide a carveout for the benefit of allowed unsecured creditors of the Debtor's estate.

9.    Trustee expects to obtain Secured Creditors' Consent and bring a separate motion seeking an order approving the sale of the Property (the "Motion to Approve Sale") within several months of the entry of the order sought by this Application.

10.    By this Application, the Trustee requests authority pursuant to Sections 327, 328(a) and 330 of the Bankruptcy Code to (a) retain BKRES and Listing Agent to procure Secured Creditors' Consent, and (b) approve Secured Creditor's payment of the fees described below directly to BKRES and Listing Agent at closing of the sale of the Property, if and when the Consent and Motion to Approve Sale are granted.

## APPLICATION

Section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327...on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage or fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).  Section 330 of the Bankruptcy Code permits the Court to "award to a trustee… or a professional person employed under section 327…(A) reasonable compensation for actual, necessary services rendered [by such party]… and (B) reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1). Compensation will be determined later in accordance with 11 U.S.C. § 330.

11.     As further described in the materials attached to their affidavits, BKRES[2] and Listing Agent have extensive experience obtaining the consent and agreement of mortgage lenders and servicers to the sale of their collateral and resolution of any resulting unsecured claims in order to produce a recovery for estates from over-encumbered assets in which the estate has no equity.

12.     The Trustee believes that the highest and best value for the Property will be generated through a sale in which the Property is widely marketed to the public and offered at the highest price that the market will bear.  The Trustee further believes that such a sale is in the best interest of the Debtor's estate, but can only be achieved if Secured Creditors' Consent is first obtained.  That is why the Trustee believes that retaining BKRES and Listing Agent to obtain Secured Creditor's Consent is in the best interests of the Debtor's estate.

---

[2] BKRES is the broker affiliate of BK Global (http://www.bkginc.com/).

13. In no event will the estate have any obligation to pay BKRES or Listing Agent. The terms of the BKRES Agreement and Listing Agreement provide that BKRES and Listing Agent are only entitled to payment if and when (a) Secured Creditor grants its Consent, (b) the Motion to Approve Sale is granted and (c) the Property is sold, in which event BKRES and Listing Agent will receive and share a 6% real estate brokerage commission at closing in accordance with the order approving the sale.

14. BKRES and Listing Agent will not be entitled to any fees if Secured Creditor does not grant its Consent or the Court does not grant the Motion to Approve Sale.

15. The Trustee submits that the terms of employment and compensation as set out in the BKRES Agreement and listing agreement are reasonable in light of the extensive experience of BKRES and Listing Agent and the nature of the services they provide.

16. BKRES attested that it is a disinterested person within the meaning of Section 101(14) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016(a). Attached hereto as **Exhibit "A"** is an Affidavit of Disinterestedness of BKRES. BKRES also attests, pursuant to Bankruptcy Rule 2016, that it shall not split or share its fee with any individual or entity other than Listing Agent.

17. Listing Agent attested that it is a disinterested person within the meaning of Section 101(14) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016(a). Attached hereto as **Exhibit "B"** is an Affidavit of Disinterestedness of Listing Agent. Listing Agent also attests, pursuant to Bankruptcy Rule 2016, that it shall not split or share its fee with any individual or entity other than BKRES.

## Conclusion

For the foregoing and all other necessary and proper purposes, the Trustee seeks the Court's authority to retain BKRES and Listing Agent in this case, and requests that the Court approve the compensation arrangements set forth in the BKRES Agreement and Listing Agreement pursuant to Sections 327, 328(a) and 330 of the Bankruptcy Code.

Dated:  January 17, 2019                         Respectfully submitted,

                                                 /s/ Christine Herendeen
                                                 Chapter 7 Trustee
                                                 P.O. Box 152348
                                                 Tampa, FL 33684
                                                 Telephone: (813) 438-3833
                                                 Email:
                                                 clherendeen@herendeenlaw.com

## CERTIFICATE OF SERVICE

I certify that on January 17, 2019 a true and correct copy of the Amended Application to Retain BK Global Real Estate Services and Hunt Realty Group, Inc. was provided electronically or U.S. mail to the parties listed below.

U. S. Trustee, 501 E. Polk Street Suite 1200, Tampa, FL 33602

Stanley J Galewski, Galewski Law Group Pa, 412 East Madison St , Ste 1106, Tampa, FL 33602

Leon Hopper, 12022 Rose Lane, Riverview, FL  33569

BK Global Real Estate Services, 1095 Broken Sound Pkwy. NW, Suite 100, Boca Raton, FL 33487.

Hunt Realty Group, Inc., 10760 Bloomingdale Ave., Riverview, FL 33578


/s/ Christine L. Herendeen

Christine L. Herendeen

UNITED STATED BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA

---

In re:                                                    :          Chapter 7
                                                          :
                                                          :          Case No. 8:18-bk-07868-CPM
                                                          :
Debtor.                                                   :
**Leon Hopper**                                           :
                                                          :

---

### DECLARATION OF PATRICK BUTLER IN SUPPORT OF APPLICATION
### TO RETAIN BK GLOBAL REAL ESTATE SERVICES AND HUNT  REALTY GROUP
### TO PROCURE CONSENTED PUBLIC SALE PURSUANT TO 11 U.S.C. § 327, 328 AND 330

The undersigned, Patrick Butler ("Declarant") hereby states:

1.      I am employed by BK Global Real Estate Services ("Applicant" or "BKRES"),

which is an entity duly licensed as a real estate brokerage by the State of Florida located at 1095

Broken Sound Pkwy. NW, Suite 100, Boca Raton, FL 33487.  I am Applicant's broker-in-charge

and am authorized by Applicant to submit this Declaration on Applicant's behalf in support of the

annexed Application to Retain BKRES and in accordance with Bankruptcy Rule 2014.

2.      Based upon the information discussed below, I believe that Applicant is a

disinterested person and does not hold or represent any interest adverse to the interest of the

Debtor's estate as that term is defined in Section 101(14) of the Bankruptcy Code.

3.      To the best of my knowledge:  (a) neither BKRES nor any of its employees has any

connection with the Debtors, its creditors in this case, the Chapter 7 Trustee, the Office of the

United States Trustee, or any employees thereof or any party in interest herein; (b) BKRES and

each of its employees are "disinterested persons," as that term is defined in Section 101(14) of the

Bankruptcy Code; and (c) neither BKRES nor any of its employees hold or represent an interest adverse to the Debtor's estate.

4.      A description of the qualifications of, and services provided by, BKRES is attached as Schedule 1.

5.      That I have read the application of the Trustee regarding the retention and compensation of BKRES and agreed to be bound by the terms and conditions represented therein.

Verified under penalty of perjury that the foregoing is true and correct this _16_ th day of January, 2019 .

_____
Patrick Butler
Corporate Broker


The foregoing instrument was acknowledged before me this    day of _16_ ,January 2019, by Patrick Butler who provided identification or is personally known to me and who aid take an oath.

_____
Notary Public-State of Florida


            My commission expires



Notary Public State of Florida
Sharon Beatrice Sirois
My Commission FF 196000
Expires 02/04/2019

## SCHEDULE I

BK Global Real Estate Services is a licensed real estate brokerage by the State of Florida, located at 1095 Broken Sound Parkway N.W., Suite 100, Boca Raton, Florida, 33487.

BK Global Real Estate Services has a strong background and extensive experience in dealing with the mortgage servicing industry and is considered an expert in assisting in the negotiations with secured creditors whose debt is in excess of the market value of the real property and in negotiating short sales.

BK Global Real Estate Services has been providing real estate services to Chapter 7 bankruptcy trustees since 2014.

BK Global Real Estate Services has developed a process to assist Chapter 7 trustees in the sale of over-encumbered real estate to obtain the consent of the secured creditor to allow the Chapter 7 trustee to sell the real property and to assist the Chapter 7 trustee in negotiating a carve out for the bankruptcy estate that will provide a meaningful distribution to the unsecured creditors..

BK Global Real Estate Services is to be retained by the Chapter 7 trustee pursuant to 11 U.S.C. § 327. The first step is for BK Global Real Estate Services to assist the Chapter 7 trustee in obtaining the consent of the secured creditor to allow the Chapter 7 trustee to sell the secured real estate. Those negotiations will include establishing a carve-out of the sale proceeds to the bankruptcy estate that will provide a meaningful distribution to unsecured creditors.

In addition, a carve out will be established to pay a real estate commission to BK Global Real Estate Services and a local real estate licensed broker. In addition, as part of the negotiations, the secured creditor will be required to waive the filing of any deficiency claim.

Once the Court has approved the retention of BK Global Real Estate Services and the local real estate licensed broker, then the real property will be listed for sale at an agreed listing price by the secured creditor.

A motion will be filed to approve the settlement and compromise reached between the Chapter 7 trustee and the secured creditor.

BK Global Real Estate Services has successfully assisted Chapter 7 trustees in 33 court districts in the consented program. BK Global Real Estate Services does this by achieving the highest sale prices for properties as opposed to the more common "discounted sale" often presented to secured creditors by less experienced service providers. The transaction is never consummated unless the carve-out percentage or fee is sufficient to provide a meaningful distribution to unsecured creditors. BK Global Real Estate Services has standards in the mortgage industry whereby all parties can have a mutually beneficial outcome to the sale. The sale of over-encumbered real estate in bankruptcy presents a superior outcome to all parties.

- Unsecured creditors achieve a meaningful distribution on many more bankruptcy cases than they do on 'no asset' cases;

- The Chapter 7 trustee is able to conduct these transactions in a very cost-effective manner substantiating the carve-out amounts generated in these sales; and

- Secured creditors achieve more favorable recovery than they would via foreclosure including minimized compliance risk.

Page 4-2 of the Handbook for Chapter 7 Trustee states that by virtue of 11 U.S.C. § 323(a) the trustee is a representative of the estate. Further, the handbook states, "The trustee is a fiduciary charged with protecting the interest of all estate beneficiaries – namely, all classes of creditors, including those holding secured, administrative, priority and non-priority unsecured claims, as well as the debtor's interest in exemptions and in any possible surplus property."

BK Global Real Estate Services is a licensed Real Estate Broker and acts in the capacity as a licensed agent/broker. As a member of the real estate professional association, BK Global Real Estate Services is permitted to work with local brokers and share fees for work conducted. Section 504(b) of the Bankruptcy Code permits the compensation BK Global Real Estate Services receives for work conducted on a case.

BK Global Real Estate Services has developed a nationwide network of licensed real estate brokers that are trained in the sale of over-encumbered real estate in bankruptcy. BK Global Real Estate Services co-lists the real estate with one of our local trained licensed brokers. The trustee hires both BK Global Real Estate Services and the local broker to perform the required services. The listing commission is split between BK Global Real Estate Services and the local broker.

For these fees, both BK Global Real Estate Services and the local broker share in the duties that are required to conduct a consented sale in bankruptcy.

BK Global Real Estate Services' services include, but are not limited to, the following:

- Researching the real estate, running title and lien searches to identify creditors for resolution and any title issues;
- Advising the trustee of any issues and discuss potential resolutions;
- Conducting the resolutions under the trustee's direction;
- Assisting the trustee in the collection of documents and information for employment;
- Making contact with the secured creditor(s);
- Notifying them of the upcoming sale and identifying servicer requirements;
- Assisting the trustee in establishing market value and negotiating with the servicer an acceptable sales price and establishing a carve-out;
- Development of online marketing, email campaign and full nationwide marketing services;
- Conducting on online sale;
- Use of the technology platform;

- Assist the trustee in the review of all offers and coordinate the final documentation of the offer accepted by the trustee;
- Managing contract requirements such as inspections, appraisals and HOA applications;
- Coordinating closings and assisting the trustee in the collection of required information for court filing; and
- Closing the transaction and ensure the estate has received the appropriate funds.

Local broker services include, but are not limited to:

- Inspecting the property and completing a broker's price opinion;
- Listing the property in the multiple listing service (MLS); and
- Posting a for sale sign in the yard and coordinating showings.

U.S. Bankruptcy Court Districts where BK Global Real Estate Services conducted Consented Sales:

- Eastern District of Arkansas
- Central District of California
- Eastern District of California
- Southern District of California
- District of Colorado
- District of Connecticut
- Middle District of Florida
- Southern District of Georgia
- District of Hawaii
- Northern District of Illinois
- Northern District of Indiana
- Southern District of Indiana
- Western District of Kentucky
- Eastern District of Louisiana
- Middle District of Louisiana
- Western District of Louisiana
- District of Massachusetts
- District of Maryland
- Eastern District of Michigan
- Eastern District of North Carolina
- District of New Jersey
- District of Nevada
- Eastern District of New York
- Northern District of  Ohio
- Southern District of  Ohio
- District of Oregon
- Eastern District of Pennsylvania

- Middle District of Pennsylvania
- Western District of Pennsylvania
- Northern District of Texas
- Western District of Texas
- Western District of Washington

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

                                      Case No. 8:18-bk-07868-CPM
                                       Chapter 7

Leon B Hopper,

    Debtor(s).

_____/

### DECLARATION IN SUPPORT OF EMPLOYMENT

1.     I, Al Carapella, am a licensed real estate agent with Hunt Realty Group, engaged to assist the trustee in carrying out the trustee's duties under the Bankruptcy Code.

2.     I do not hold or represent an interest adverse to the estate.

3.     I am not a creditor, equity security holder, or insider of the Debtor.

4.     I am not, and was not within the two years before the petition date, a director, officer, or employee of the Debtor.

5.     I have no interest materially adverse to the interest of the estate or of any class of creditors or equity holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtor, or for any other reason.

6.     I further state that neither I, nor Hunt Realty Group, have any connection or otherwise have no interest adverse to the Debtors, creditors, or any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the Office of the United States Trustee.

7.     I have not and will not agree to share my compensation for such services with any person, with the exception of a qualified cooperating real estate broker, if one shall exist.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on:  January 10, 2019

By: _____
      Al Carapella
      2713 Buckhorn Oaks Dr.
      Valrico, FL 33594

# Exclusive Right of Sale Listing Agreement

*FloridaRealtors*

1  This Exclusive Right of Sale Listing Agreement ("Agreement") is between

2* _____ Christine Herendeen Chapter 7 Trustee for the estate of Hopper Case No 8:18- bk-07868 _____ ("**Seller**")

3* and _____ Hunt Realty Group/Al Carapella _____ ("**Broker**").

4   **1.  Authority to Sell Property:  Seller** gives **Broker** the EXCLUSIVE RIGHT TO SELL the real and personal
5   property (collectively "Property") described below, at the price and terms described below, beginning
6* \_\_\_\_\_ January 10, 2019 \_\_\_\_\_ and terminating at 11:59 p.m. on \_\_\_\_ February 28, 2019 \_\_\_\_ ("Termination Date"). Upon
7   full execution of a contract for sale and purchase of the Property, all rights and obligations of this Agreement will
8   automatically extend through the date of the actual closing of the sales contract. **Seller** and **Broker** acknowledge
9   that this Agreement does not guarantee a sale. This Property will be offered to any person without regard to race,
10  color, religion, sex, handicap, familial status, national origin, or any other factor protected by federal, state, or local
11  law. **Seller** certifies and represents that she/he/it is legally entitled to convey the Property and all improvements.

12  **2.  Description of Property:**
13*     **(a) Street Address:** 12022 Rose Ln Riverview Fl. 33569 _____

14      _____

15*         Legal Description: _____

16*     _____ ☐ See Attachment

17*     **(b) Personal Property, including appliances:** _____ N/A

18*     _____ ☐ See Attachment

19      **(c) Occupancy:**
20*         Property ☐ is ☒ is not currently occupied by a tenant. If occupied, the lease term expires _____.

21  **3.  Price and Terms:** The property is offered for sale on the following terms or on other terms acceptable to **Seller**:
22*     **(a) Price:** $150,000.00
23*     **(b) Financing Terms:** ☒ Cash ☒ Conventional ☐ VA ☐ FHA ☐ Other (specify) _____
24*         ☐ **Seller** Financing: **Seller** will hold a purchase money mortgage in the amount of $ _____
25*         with the following terms: _____
26*         ☐ Assumption of Existing Mortgage: Buyer may assume existing mortgage for $ _____ plus
27*         an assumption fee of $ _____. The mortgage is for a term of _____ years beginning in
28*         _____, at an interest rate of _____ % ☐ fixed ☐ variable (describe) _____
29*         Lender approval of assumption ☐ is required ☐ is not required ☐ unknown. **Notice to Seller:** (1) You may
30          remain liable for an assumed mortgage for a number of years after the Property is sold. Check with your
31          lender to determine the extent of your liability. **Seller** will ensure that all mortgage payments and required
32          escrow deposits are current at the time of closing and will convey the escrow deposit to the buyer at closing.
33          (2) Extensive regulations affect **Seller** financed transactions. It is beyond the scope of a real estate licensee's
34          authority to determine whether the terms of your **Seller** financing agreement comply with all applicable laws or
35          whether you must be registered and/or licensed as a loan originator before offering **Seller** financing. You are
36          advised to consult with a legal or mortgage professional to make this determination.
37*     **(c) Seller Expenses: Seller** will pay mortgage discount or other closing costs not to exceed _____ % of the
38          purchase price and any other expenses **Seller** agrees to pay in connection with a transaction.

39  **4.  Broker Obligations: Broker** agrees to make diligent and continued efforts to sell the Property until a sales
40      contract is pending on the Property.

41  **5.  Multiple Listing Service:** Placing the Property in a multiple listing service (the "MLS") is beneficial to **Seller**
42      because the Property will be exposed to a large number of potential buyers. As a MLS participant, **Broker** is
43      obligated to timely deliver this listing to the MLS. This listing will be promptly published in the MLS unless **Seller**
44      directs **Broker** otherwise in writing. This listing authorizes **Broker** to report to the MLS this listing information and price,
45      terms, and financing information on any resulting sale for use by authorized Board / Association members and
46      MLS participants and subscribers unless **Seller** directs **Broker** otherwise in writing.

Seller (\_\_\_) (\_\_\_) and Broker/Sales Associate (\_\_\_) (\_\_\_) acknowledge receipt of a copy of this page, which is Page 1 of 4.
ERS-17tb   Rev 6/17
Serial#: 033290-100154-7125494

©2017 Florida Realtors®

formsimplicity

**6. Broker Authority:** **Seller** authorizes **Broker** to:

   **(a)** Advertise the Property as **Broker** deems advisable including advertising the Property on the Internet unless limited in (6)(a)(i) or (6)(a)(ii) below.

   **(Seller opt-out) (Check one if applicable)**

     **(i)** ☒ Display the Property on the Internet except the street address.

     **(ii)** ☐ **Seller** does not authorize **Broker** to display the Property on the Internet.

     **Seller** understands and acknowledges that if **Seller** selects option (ii), consumers who search for listings on the Internet will not see information about the Property in response to their search.

     _____/_____ **Initials of Seller**

   **(b)** Place appropriate transaction signs on the Property, including "For Sale" signs and "Sold" signs (once **Seller** signs a sales contract) and use **Seller's** name in connection with marketing or advertising the Property.

   **(c)** Obtain information relating to the present mortgage(s) on the Property.

   **(d)** Provide objective comparative market analysis information to potential buyers.

   **(e) (Check if applicable)** ☒ Use a lock box system to show and access the Property. A lock box does not ensure the Property's security. **Seller** is advised to secure or remove valuables. **Seller** agrees that the lock box is for **Seller's** benefit and releases **Broker**, persons working through **Broker**, and **Broker's** local Realtor Board / Association from all liability and responsibility in connection with any damage or loss that occurs.
     ☐ Withhold verbal offers. ☐ Withhold all offers once **Seller** accepts a sales contract for the Property.

   **(f)** Act as a transaction broker.

   **(g) Virtual Office Websites:** Some real estate brokerages offer real estate brokerage services online. These websites are referred to as Virtual Office Websites ("VOWs"). An automated estimate of market value or reviews and comments about a property may be displayed in conjunction with a property on some VOWs. Anyone who registers on a VOW may gain access to such automated valuations or comments and reviews about any property displayed on a VOW. Unless limited below, a VOW may display automated valuations or comments and reviews about this Property.
     ☒ **Seller** does not authorize an automated estimate of the market value of the listing (or a hyperlink to such estimate) to be displayed in immediate conjunction with the listing of this Property.
     ☐ **Seller** does not authorize third parties to write comments or reviews about the listing of the Property (or display a hyperlink to such comments or reviews) in immediate conjunction with the listing of this Property.

**7. Seller Obligations:** In consideration of **Broker's** obligations, **Seller** agrees to:

   **(a)** Cooperate with **Broker** in carrying out the purpose of this Agreement, including referring immediately to **Broker** all inquiries regarding the Property's transfer, whether by purchase or any other means of transfer.

   **(b)** Provide **Broker** with keys to the Property and make the Property available for **Broker** to show during reasonable times.

   **(c)** Inform **Broker** before leasing, mortgaging, or otherwise encumbering the Property.

   **(d)** Indemnify **Broker** and hold **Broker** harmless from losses, damages, costs, and expenses of any nature, including attorney's fees, and from liability to any person, that **Broker** incurs because of (1) **Seller's** negligence, representations, misrepresentations, actions, or inactions; (2) the use of a lock box; (3) the existence of undisclosed material facts about the Property; or (4) a court or arbitration decision that a broker who was not compensated in connection with a transaction is entitled to compensation from **Broker**. This clause will survive **Broker's** performance and the transfer of title.

   **(e)** Perform any act reasonably necessary to comply with FIRPTA (Section 1445 of the Internal Revenue Code).

   **(f)** Make all legally required disclosures, including all facts that materially affect the Property's value and are not readily observable or known by the buyer. **Seller** certifies and represents that **Seller** knows of no such material facts (local government building code violations, unobservable defects, etc.) other than the following:
     _____ N/A _____
     **Seller** will immediately inform **Broker** of any material facts that arise after signing this Agreement.

   **(g)** Consult appropriate professionals for related legal, tax, property condition, environmental, foreign reporting requirements, and other specialized advice.

**8. Compensation:** **Seller** will compensate **Broker** as specified below for procuring a buyer who is ready, willing, and able to purchase the Property or any interest in the Property on the terms of this Agreement or on any other terms acceptable to **Seller**. **Seller** will pay **Broker** as follows (plus applicable sales tax):

   **(a)** _____ 6% of the total purchase price plus $_____ OR $_____, no later than the date of closing specified in the sales contract. However, closing is not a prerequisite for **Broker's** fee being earned.

   **(b)** _____ 0 ($ or %) of the consideration paid for an option, at the time an option is created. If the option is exercised, **Seller** will pay **Broker** the Paragraph 8(a) fee, less the amount **Broker** received under this subparagraph.

---

Seller (_____) (_____) and Broker/Sales Associate (_____) (_____) acknowledge receipt of a copy of this page, which is Page 2 of 4.

Serial#: 033290-100154-7125494

©2017 Florida Realtors®

formsimplicity

105*     (c) _____0 ($ or %) of gross lease value as a leasing fee, on the date **Seller** enters into a lease or
106     agreement to lease, whichever is earlier. This fee is not due if the Property is or becomes the subject of a
107     contract granting an exclusive right to lease the Property.

108     (d) **Broker's** fee is due in the following circumstances: (1) If any interest in the Property is transferred, whether by
109     sale, lease, exchange, governmental action, bankruptcy, or any other means of transfer, regardless of whether
110     the buyer is secured by **Seller**, **Broker**, or any other person. (2) If **Seller** refuses or fails to sign an offer at the
111     price and terms stated in this Agreement, defaults on an executed sales contract, or agrees with a buyer to
112*     cancel an executed sales contract. (3) If, within ____0____ days after Termination Date ("Protection Period"),
113     **Seller** transfers or contracts to transfer the Property or any interest in the Property to any prospects with whom
114     **Seller**, **Broker**, or any real estate licensee communicated regarding the Property before Termination Date.
115     However, no fee will be due **Broker** if the Property is relisted after Termination Date and sold through another
116     broker.

117*     (e) **Retained Deposits:** As consideration for **Broker's** services, **Broker** is entitled to receive ____0____% (50% if
118     left blank) of all deposits that **Seller** retains as liquidated damages for a buyer's default in a transaction, not to
119     exceed the Paragraph 8(a) fee.

120   **9.**   **Cooperation with and Compensation to Other Brokers: Notice to Seller:** The buyer's broker, even if
121     compensated by **Seller** or **Broker**, may represent the interests of the buyer. **Broker's** office policy is to cooperate
122     with all other brokers except when not in **Seller's** best interest and to offer compensation in the amount of
123*     ☐ ____2% of the purchase price or $_____ to a single agent for the buyer; ☐ ____2% of the
124*     purchase price or $_____ to a transaction broker for the buyer; and ☐ ____2% of the purchase
125*     price or $_____ to a broker who has no brokerage relationship with the buyer.
126*     ☐ None of the above. (If this is checked, the Property cannot be placed in the MLS.)

127   **10.**   **Brokerage Relationship:** **Broker** will act as a transaction broker. **Broker** will deal honestly and fairly; will account
128     for all funds; will use skill, care, and diligence in the transaction; will disclose all known facts that materially affect
129     the value of the residential property which are not readily observable to the buyer; will present all offers and
130     counteroffers in a timely manner unless directed otherwise in writing; and will have limited confidentiality with
131     **Seller** unless waived in writing.

132   **11.**   **Conditional Termination:** At **Seller's** request, **Broker** may agree to conditionally terminate this Agreement. If
133     **Broker** agrees to conditional termination, **Seller** must sign a withdrawal agreement, reimburse **Broker** for all direct
134*     expenses incurred in marketing the Property, and pay a cancellation fee of $0.00 _____ plus
135     applicable sales tax. **Broker** may void the conditional termination, and **Seller** will pay the fee stated in Paragraph
136     8(a) less the cancellation fee if **Seller** transfers or contracts to transfer the Property or any interest in the Property
137     during the time period from the date of conditional termination to Termination Date and Protection Period, if
138     applicable.

139   **12.**   **Dispute Resolution:** This Agreement will be construed under Florida law. All controversies, claims, and other
140     matters in question between the parties arising out of or relating to this Agreement or the breach thereof will be
141     settled by first attempting mediation under the rules of the American Mediation Association or other mediator
142     agreed upon by the parties. If litigation arises out of this Agreement, the prevailing party will be entitled to recover
143     reasonable attorney's fees and costs, unless the parties agree that disputes will be settled by arbitration as follows:
144*     **Arbitration:** By initialing in the space provided, **Seller** (____) (____), Sales Associate (____), and **Broker** (____)
145     agree that disputes not resolved by mediation will be settled by neutral binding arbitration in the county in which
146     the Property is located in accordance with the rules of the American Arbitration Association or other arbitrator
147     agreed upon by the parties. Each party to any arbitration (or litigation to enforce the arbitration provision of this
148     Agreement or an arbitration award) will pay its own fees, costs, and expenses, including attorney's fees, and will
149     equally split the arbitrator's fees and administrative fees of arbitration.

150   **13.**   **Miscellaneous:** This Agreement is binding on **Seller's** and **Broker's** heirs, personal representatives,
151     administrators, successors, and assigns. **Broker** may assign this Agreement to another listing office. This
152     Agreement is the entire agreement between **Seller** and **Broker**. No prior or present agreements or representations
153     will be binding on **Seller** or **Broker** unless included in this Agreement. Electronic signatures are acceptable and
154     will be binding. Signatures, initials, and modifications communicated by facsimile will be considered as originals.
155     The term "buyer" as used in this Agreement includes buyers, tenants, exchangors, optionees, and other categories
156     of potential or actual transferees.

Seller (____) (____) and Broker/Sales Associate (____) (____) acknowledge receipt of a copy of this page, which is Page 3 of 4.

ERS-17tb   Rev 6/17

Serial#: 033290-100154-7125494                                  ©2017 Florida Realtors®

formsimplicity

157*    14. **Additional Terms:** _____

158    _____

159    _____

160    _____

161    _____

162    _____

163    _____

164    _____

165    _____

166    _____

167    _____

168    _____

169    _____

170*    **Seller's Signature:** _____ _on Trust___ Date: 1/10/19

171*    Home Telephone: _NA_____ Work Telephone: 813-935-3855 _Case No 8:18-07868-G7M_ Facsimile: _____

172*    Address: _P.O. Box. 152348_____

173*    Email Address: _dhoesten @ hoestenlaw.com_

174*    **Seller's Signature:** _____ Date: _____

175*    Home Telephone: _____ Work Telephone: _____ Facsimile: _____

176*    Address: _____

177*    Email Address: _____

178*    **Authorized Sales Associate or Broker:** _____ Date: 1/10/19

179*    Brokerage Firm Name: _____ Hunt Realty Group/Al Carapella _____ Telephone: 813 294 6545

180*    Address: _____ 108 Oakgrove Dr suite 233 Brandon Fl.33510 _____

181*    ┌─────────────────────────────────────────────┐
       │ Copy returned to **Seller** on _____ by [x] email ☐ facsimile ☐ mail ☐ personal delivery. │
       └─────────────────────────────────────────────┘

Florida REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics. The copyright laws of United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

Seller (____) (____) and Broker/Sales Associate (____) (____) acknowledge receipt of a copy of this page, which is Page 4 of 4.

ERS-____ Rev 6/17

Serial#: 0332__-100154-7125494

©2017 Florida Realtors®

Bankruptcy (Broker) Addendum

This Addendum is made part of that Exclusive Right-To-Sell Listing Agreement referenced above (the "Listing Agreement"), for the sale of 12022 Rose Lane, Riverview, FL (the "Property") , in which Christine Herendeen, Trustee of the Bankruptcy Estate of Leon B Hopper, is also referred to as the "Seller" and Al Carapella is referred to as the "Listing Broker."

1.      The Listing Broker hereby acknowledges that Christine Herendeen, Trustee, is a Bankruptcy Trustee, and as Trustee, Ms. Herendeen is not privy to facts concerning the condition of the property. The Listing Broker waives any disclosure from Christine Herendeen and understands that all land, improvements, and real and any permitted personal property will be sold, conveyed, and/or assigned, as applicable, by the Seller in an "As-Is" condition, and that the Seller hereby expressly disclaims any and all warranties, whether express or implied, with respect to the land, improvements, and real and personal property.

2.      The Listing Broker understands that Christine Herendeen, Trustee of the Bankruptcy Estate of Leon B Hopper, is the Transferor/Seller  in this matter in her capacity as Chapter 7 Bankruptcy Trustee, and not individually.

3.      The Listing Broker understands that the listing of this property and the subsequent sale is subject to Bankruptcy Court approval, and that the Listing Agreement shall not be binding upon the Seller unless and until it is approved by the Bankruptcy Court. Listing Broker further agrees that the Bankruptcy Court will permit other parties to submit bids for this property.

4.      Listing Period. To the extent the Listing Agreement states otherwise, it is modified to provide that the parties agree that this listing agreement may be terminated by the Seller at any time if Seller decides not to pursue sale of the Property.

5.      Compensation to Broker. To the extent the Listing Agreement states otherwise, the Listing Agreement is modified to provide that Seller agrees to pay compensation only upon approval of the sale by the Bankruptcy Court and closing of the sale. Listing Broker acknowledges that the Bankruptcy Court may determine part of the compensation to Listing Broker provided for in the listing agreement may be payable to a real estate broker representing the Buyer of the Property.

6.      Seller's representations of Title/Marketable Title: The Listing Agreement is modified to provide that Seller agrees to seek approval of Bankruptcy Court to convey marketable title and to provide an owner's title insurance policy. The Seller will only execute a Trustee's Deed without any warranties. The Seller relies upon the bankruptcy court order to convey marketable title that is free and clear of any liens, claims and interests.

7.    Seller's Obligations/ Seller's Disclosure Statement. Disclosure of Material Facts. With respect to Seller's Disclosure Statement, Seller does not intend to make a written disclosure statement, as Seller has no information regarding the condition if the Property. Listing Broker may seek, to the extent possible, for or from the Buyer, a written disclosure statement from the Debtor, waiver of written disclosure statement by the Buyer and/or a written disclosure statement from an expert of professional.

8.    Costs. To the extent the Listing Agreement states otherwise, the Listing Agreement is modified to provide that seller will pay costs agreed to by Seller, subject however to Bankruptcy Court approval, if required.

9.    Mediation and Arbitration. To the extent the Listing Agreement states otherwise, the Listing Agreement is modified to provide that the Bankruptcy Court for the Middle District of Florida shall have exclusive jurisdiction over all disputes or claims relating to the sale of this Property.

10.    Indemnification. To the extent the Listing Agreement state otherwise, any indemnification language in the Listing Agreement is stricken.

DATED: Tampa, FL     1/10/18

_____
Christine Herendeen, as Trustee
and only as Trustee

_____
Al Carapella, Listing Agent

_____
Al Carapella for Hunt Realty Group